UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

v.                                       Case No. 8:19-cv-

$30,010.00 in United States Currency,

   Defendant.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America brings this complaint and alleges upon information and belief, in accordance with Supp'l Rule G(2), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, as follows:

## NATURE OF THE ACTION

1.     This is a civil action *in rem* to forfeit to the United States of America, pursuant to 21 U.S.C. § 881(a)(6), approximately $30,010 in United States currency seized from Justin Mark Duzdar at the Orlando International Airport (Defendant Funds).

## JURISDICTION AND VENUE

2.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides the Court with jurisdiction over all civil actions commenced by the United States, and pursuant to 28 U.S.C. §

1355, which provides the Court with jurisdiction over actions to recover or

enforce forfeitures.

3.      This Court has *in rem* jurisdiction over the Defendant Funds

because venue properly lies in the Middle District of Florida pursuant to 28

U.S.C. § 1395.

4.      Venue is proper in the United States District Court for the

Middle District of Florida, pursuant to 28 U.S.C. § 1395(b), because the

Defendant Funds were found and seized in this district.

## THE DEFENDANT *IN REM*

5.      The Defendant Funds consist of approximately $30,010 in

United States currency seized from Justin Mark Duzdar on March 15, 2018 at

the Orlando International Airport by law enforcement officers who

determined that there was probable cause to believe that the Defendant Funds

constituted: (1) money furnished or intended to be furnished by a person in

exchange for a controlled substance in violation of the Controlled Substances

Act; (2) proceeds traceable to such an exchange; or (3) money used or

intended to be used to facilitate a violation of the Controlled Substances Act.

6.      The Drug Enforcement Administration (DEA) took custody of

the Defendant Funds, and the funds remain in the custody of the United

States.   As set forth in Supp'l Rule G(3)(b)(i), the Clerk of Court must issue a
warrant to arrest the Defendant Funds if they are in the government's
possession, custody, or control.

## BASIS FOR FORFEITURE

7.     The Defendant Funds are subject to forfeiture to the United
States pursuant to 21 U.S.C. § 881(a)(6) because they constitute: (1) money
furnished or intended to be furnished by a person in exchange for a controlled
substance in violation of the Controlled Substances Act; (2) proceeds traceable
to such an exchange; or (3) money used or intended to be used to facilitate a
violation of the Controlled Substances Act.

## FACTS

8.     The facts and circumstances supporting the forfeiture of the
Defendant Funds have been provided by DEA Task Force Officer Homero
Valerio, Jr., who states as follows.

### 2009 Pinellas County Drug Trafficking Arrest and Conviction

9.     On August 17, 2009, Justin Mark Duzdar sold approximately 84
grams of cocaine to an undercover officer of the Clearwater Police
Department for $2,565.00. The transaction took place in Pinellas County,
Florida. As a result, Duzdar was arrested, charged, and adjudicated guilty of

3

the First Degree Felony of Trafficking in Cocaine, in violation of the Florida

Comprehensive Drug Abuse Prevention and Control Act. Duzdar was

sentenced to a term of imprisonment (to be followed by probation) and

ordered to pay a $50,000 fine.

### Airport Seizure

10.     On March 15, 2018, Duzdar and Noel Adonis Mark Barnett

were ticketed to fly one-way on American Airlines flight 473 from Orlando to

Los Angeles, California at approximately 7:10 a.m. California is a known

source state for controlled substances. Drug traffickers often purchase one-way

tickets since the drug trade is unpredictable.

11.     Law enforcement officers observed Duzdar and Barnett walking

towards gate 54 (approximately 25 minutes before the flight's scheduled

departure). It is common practice for drug traffickers to check in early for their

flights and wait until the last minute to actually board the aircraft. This

practice is intended to minimize contact with law enforcement.

12.     Law enforcement officers approached Duzdar and identified

themselves. Duzdar stopped to speak with agents while Barnett continued

walking in what appeared to be an effort to distance himself from Duzdar.

13.     Duzdar agreed to talk with Officer Valerio and showed the

4

officer a Florida Driver's license which listed his address in Pinellas Park, Florida. Below are photographs of the residence located at that address.





14.     Other law enforcement officers approached Barnett, identified themselves, and asked Barnett if they could speak with him. Barnett agreed to speak with the agents and showed them a Florida Driver's license which listed his address in St. Petersburg, Florida. Below is a photograph of the residence located at that address.



15.     Officer Valerio asked if Duzdar was traveling with any drugs, weapons, or a large amount of money, and Duzdar stated he was traveling with money.

16.     Officer Valerio inquired further about the money and Duzdar pulled bundles of U.S. currency from his pocket and handed the money to Officer Valerio.

17.     The currency was banded in bundles with rubber-bands. Duzdar told Officer Valerio that each of the bundles contained $5,000.00.

18.     Duzdar was traveling with a backpack and a small duffle bag. Officer Valerio asked Duzdar if there was money in his carry-on bags. Duzdar replied that he also had money in his backpack.

19.     Duzdar gave Officer Valerio permission to search his carry-on bags and Officer Valerio found three additional bundles of U.S currency (one bundle in the backpack and two bundles in the duffle bag). These bundles were also banded with rubber-bands.

20.     The way in which the money was bundled was consistent with how drug traffickers transport currency.

21.     Officer Valerio questioned Duzdar about the money, his travel itinerary, and the purpose of his travel.

22.     Duzdar stated that he purchased his airline ticket a few days prior to travel and was traveling with about $30,000.00.

23.     Duzdar claimed that that he owned a clothing design business named "Hype Clothing LLC." – which he said he operated from his home. He claimed the business dealt primarily in cash. The drug trade is also a cash business.

24.     Duzdar stated he was traveling with the money to purchase textiles, which he then would contract out to manufacturing companies with his designs to mass produce his clothing line.

25.     Duzdar claimed that he sold the bulk of his clothing to Jetsons Clothing, located at 140 University Town Center Suite 192, Sarasota, Florida. Duzdar's brother, Aladin Duzdar, is the registered agent and Chief Operating Officer of Jetsons Clothing, LLC.

26.     Duzdar was unable to provide any information, including the names or contact information for the people/companies he was allegedly meeting with in Los Angeles to purchase textiles.

27.     Officer Valerio asked Duzdar if he had a business bank account. Duzdar stated that he used to have a business bank account, but had a falling-out with his business partner, so he no longer used the account. Duzdar was unable to provide any information about his former partner.

8

28.     Officer Valerio then asked Duzdar if he knew, or if he was traveling with Barnett. Duzdar denied knowing or traveling with Barnett.

29.     While Officer Valerio was speaking with Duzdar, other agents were interviewing Barnett.

30.     Barnett said that he drove himself and Duzdar (in the same vehicle) to the Orlando airport from the St. Petersburg, Florida area. Barnett said he knows Duzdar as "Justin," and they had been friends for a while. Barnett claimed that he had purchased his ticket that morning. Barnett claimed that he is an investor in Duzdar's company, but was unable to provide any information regarding the company.

31.     Barnett stated that he did not have any checked bags and was only traveling with his backpack and a small carry-on suitcase.

32.     Barnett stated he was traveling to California to visit his cousin "Trayvon," but was unable to provide a last name, address, or phone number for "Trayvon."

33.     Barnett could not provide any information about his plans upon his arrival in California, such as where he was going to stay, or how he planned to get around. Barnett stated he had not thought about any of that yet.

34.     Barnett said he was carrying approximately $7,000.00 inside his

backpack, and claimed that all of the money in his possession belonged to him. Barnett could not provide a reason as to why he was carrying so much cash. He claimed he had no plans on how to spend it in California.

35. Barnett allowed agents to search his bags and agents found approximately $7,800 in Barnett's backpack.

36. The money was wrapped in rubber bands – similar to how Duzdar had his money bundled.

37. When asked what the money was for, Barnett could not provide an answer and just stood silently. When asked where the money came from, Barnett responded that he wrote internet blogs and got paid in cash.

38. Barnett said he had a bank account at Chase Bank and went online to show agents that the account had a balance of $118. Barnett claimed that he also had an account at Bank of America, but said that was overdrawn. Barnett claimed that he kept the money he was traveling with at his house.

39. In addition to the $7,800 found in Barnett's backpack, agents found six cardboard shipping boxes inside Barnett's carry-on suitcase (see below). The boxes were similar to boxes drug-traffickers use to ship controlled substances from the west coast to Florida.

 

40.    Barnett claimed the boxes were for his clothes, but could not explain why he would need boxes for his clothes when he had a carry-on suitcase and a large backpack. Between the backpack and carry-on suitcase, Barnett had only one sweatshirt, two shirts, one pair of pants, and one pair of socks.

41.    Agents told Barnett that they believed he was traveling to California to purchase marijuana to ship back to Florida, and was going to use the boxes inside his suitcase to do so. In response, Barnett looked down at the ground and remained silent.

42.    A properly trained narcotics detection dog positively alerted to the presence of the odor of drugs on the Defendant Funds. The dog is trained to detect the odor of six controlled substances: marihuana, cocaine HCL, cocaine base, heroin, methamphetamine, and MDMA.

43.     Individuals who handle controlled substances often get traces of the substances on their hands and clothing. These trace amounts of a controlled substance can easily be spread to other items the individual touches such as currency. A positive alert to U.S. currency by a properly trained dog indicates that the currency had either been handled by someone who had trace amounts of a controlled substance on their hands, or the currency had recently been in close proximity to a controlled substance.

44.     Agents informed Duzdar and Barnett that they believed the money in their possession was intended to be used to purchase marihuana and therefore the money would be seized.

45.     The money seized from Duzdar was taken to Loomis Financial Services where it was counted. The total seized from Duzdar was $30,010. The money seized from Barnett – $7,780 – is not included in this complaint because Barnett did not contest their administrative forfeiture by the.

## ADDITIONAL INVESTIGATION

46.     According to Florida Wage and Hourly Reports, Duzdar's reported wages were as follows:

2012—$3,604.39

2013—$14,920.14

2014—$4,034.83

2015—$3,607.65

2016—no reported income.

2017—no reported income.

2018—no reported income.

47.     According to Florida Wage and Hourly Reports, Barnett's reported wages were as follows:

2012—$791.54

Since 2012—no reported income.

48.     In 2014, Duzdar was a party to a paternity action in the Circuit Court for Pinellas County. As part of those proceedings, Duzdar filed two sworn financial affidavits. In the first financial affidavit, filed on May 29, 2014, Duzdar stated that he was employed by CVS, and made $600 per month gross salary. Duzdar also stated that he had only $36 cash on hand and no assets, other than a vehicle for which he owed $13,000.

49.     In the second financial affidavit, filed on November 6, 2014, Duzdar said he was employed by Eternal Entertainment, and made $1,000 per month gross salary. Duzdar further stated that he had only $29 cash on hand and no assets, other than the vehicle for which he owed $12,000.

50.     For the reasons stated above, probable cause exists to believe that the Defendant Funds are subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

## CONCLUSION

51.     As required by Supp'l Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial.   Specifically, probable cause exists to believe that the Defendant Funds constitute: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act and are therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, pursuant to Supp'l Rule G, Plaintiff United States of America respectfully requests that process of forfeiture be issued against the Defendant Funds; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that the Defendant Funds be forfeited to the United States for disposition according to law; and

that the United States have such other and further relief as this case may

require.

Dated: November 25, 2019          Respectfully Submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: _____

JAMES A. MUENCH
Assistant United States Attorney
Florida Bar Number 472867
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
(813) 274-6000 – telephone
E-mail: james.muench2@usdoj.gov

By: _____

NICOLE M. ANDREJKO
Assistant United States Attorney
Florida Bar Number 0820601
400 W. Washington St., Ste. 3100
Orlando, Florida 32801
(407) 648-7500 – telephone
(407) 648-7643 – facsimile
E-mail: nicole.andrejko@usdoj.gov

**<u>VERIFICATION</u>**

I, Homero Valerio, Jr., hereby verify and declare under penalty of perjury, that I am a Task Force Officer with the Drug Enforcement Administration, and pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case together with other DEA Special Agents and Task Force Officers.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 25 day of November, 2019.

Homero Valerio, Jr., Task Force Officer
Drug Enforcement Administration

16

JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

## DEFENDANTS

**(b)**  County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury  - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | |
| | | | | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
*(specify)*

☐ 6   Multidistrict
Litigation -
Transfer

☐ 8   Multidistrict
Litigation -
Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

☐   CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:        ☐ Yes     ☐No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #                AMOUNT                    APPLYING IFP                        JUDGE                            MAG. JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.